1  Ekwan E. Rhow - State Bar No. 174604
      erhow@birdmarella.com
2  Timothy B. Yoo - State Bar No. 254332
      tyoo@birdmarella.com
3  BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
   DROOKS, LINCENBERG & RHOW, P.C.
4  1875 Century Park East, 23rd Floor
   Los Angeles, California 90067-2561
5  Telephone: (310) 201-2100
   Facsimile: (310) 201-2110

6  Benoit Quarmby (*pro hac vice forthcoming*)
      bquarmby@mololamken.com
7  Jonathan E. Barbee (*pro hac vice forthcoming*)
      jbarbee@mololamken.com
8  Catherine Martinez (*pro hac vice forthcoming*)
      cmartinez@mololamken.com
9  MOLOLAMKEN LLP
   430 Park Avenue
10 New York, NY  10022
   Telephone: (212) 607-8160
11 Facsimile: (212) 607-8161

12 Attorneys for Plaintiff Protective Industrial
   Products, Inc.
13

14                  **UNITED STATES DISTRICT COURT**

15                  **CENTRAL DISTRICT OF CALIFORNIA**

16

17 PROTECTIVE INDUSTRIAL                 CASE NO. 2:23-cv-00265
   PRODUCTS, INC.,
18                                       **COMPLAINT FOR TRADEMARK**
              Plaintiff,                 **INFRINGEMENT AND FALSE**
19                                       **DESIGNATION OF ORIGIN**
        vs.
20
   BOSS INNOVATION & MARKETING,
21 INC. d/b/a BOSS SAFETY PRODUCTS,      **JURY TRIAL DEMANDED**

22            Defendant.

23

24       Plaintiff Protective Industrial Products, Inc. ("PIP" or "Plaintiff"), for its complaint

25 against Defendant BOSS Innovation & Marketing, Inc. d/b/a BOSS Safety Products ("BIM"

26 or "Defendant"), alleges the following:

27

28

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

### NATURE OF THE ACTION

1.     This is an action for trademark infringement and false designation of origin arising under the Lanham Act, 15 U.S.C. § 1051 et seq.

### THE PARTIES

2.     PIP is a corporation organized under the laws of the State of New York, with a principal place of business at 25 British American Boulevard, Latham, NY 12110.  In 2019, PIP purchased Boss Manufacturing Company's BOSS Glove and Safety business.  PIP advertises and sells gloves under the "BOSS" brand that it acquired from Boss Manufacturing Company.

3.     BIM is a corporation organized under the laws of the State of California, with a principal place of business at 30081 Comercio, Rancho Santa Margarita, CA 92688.  BIM advertises and sells products under the "BOSS," "BOSS Safety Products," "BOSS Tactical Supplies," "BOSS Emergency Preparedness," and "BOSS StrongBox" brands.

4.     BIM has promoted, marketed, and sold products in the United States that infringe on PIP's trademarks.  More specifically, BIM promotes, markets, and sells infringing products throughout the United States, including in this judicial District, and distributes these infringing products in the stream of commerce knowing that they will be used in this judicial District and elsewhere in the United States.  BIM also promotes, markets, and sells these products with a false designation of origin throughout the United States, including in this judicial District.

### JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a)-(b), and 15 U.S.C. § 1121.

6.     This Court has personal jurisdiction over BIM because BIM has purposefully availed itself of the rights and benefits of the laws of this State and this District.  Specifically, BIM has a principal place of business in this State and in this District.  This Court also has personal jurisdiction over BIM because it has done and is doing substantial business in this

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

1   District, both generally and with respect to the allegations in this complaint, including BIM's

2   acts of infringement and false designation of origin.

3        7.        Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c), as BIM (i) has

4   committed acts of infringement and false designation of origin in this District, (ii) has a

5   regular and established place of business in this District, and (iii) resides in this District.

6                                    **BACKGROUND**

7   **I.        PIP'S "BOSS" MARKS**

8        8.        PIP has been involved in the personal protective equipment ("PPE") industry

9   since its founding in 1984 and is recognized as a global leader in that industry.  PIP supplies

10  a variety of PPE products, including gloves for hand and arm protection.

11       9.        Boss Manufacturing Company is the oldest work glove company in the United

12  States, and has been recognized as the preeminent leader in the work glove industry.  For

13  over a century, Boss Manufacturing Company has sold its gloves under its "BOSS" mark.

14  With operations dating back to 1893, the "BOSS" mark has been used for and recognized as

15  representing Boss Manufacturing Company's work gloves nationally and internationally.

16  Today, the "BOSS" mark can be found on some of the most popular work, garden, and sports

17  gloves on the market, as well as a variety of boots, rainwear, and safety gear.  The mark is

18  iconic in its field.

19       10.       PIP purchased the Boss Glove and Safety business, including the "BOSS"

20  mark and related marks, from Boss Manufacturing Company in 2019.  That purchase was

21  driven in large part by the "BOSS" brand's global recognition as a trusted and high-quality

22  source of work gloves and PPE.

23       11.       Since its acquisition of the Boss Glove and Safety business, PIP has diligently

24  maintained the family of "BOSS" trademarks (the "BOSS® Marks") registered by Boss

25  Manufacturing Company to protect its brand.  For example, PIP owns the "BOSS" mark for

26  a variety of goods and services through marks registered under U.S. Registration Nos.

27  1,974,576; 1,718,343; 1,146,594; 1,245,859; 1,221,513; 570,011; 210,819; 189,372; and

28

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

114,219.  In particular, PIP owns and uses the "BOSS" mark for various types of gloves, including work gloves, ski gloves, driving gloves, bicycling gloves, golf gloves, archery gloves, shooting gloves, and snowmobiling gloves (U.S. Reg. Nos. 1,974,576; 1,718,343; 570,011; 210,819; 189,372; and 114,219).  Relatedly, PIP also owns trademarks for "WORK HARD. WEAR BOSS." (U.S. Reg. No. 4,833,262); "BOSS THERM" (U.S. Reg. No. 4,740,612); "BOSS HARVESTER" (U.S. Reg. No. 5,071,598); "BOSS TECH" (U.S. Reg. No. 4,229,060); "BOSS OUTDOORS" (U.S. Reg. No. 3,249,886); "BOSS EXTREME" (U.S. Reg. No. 2,743,904); "BOSS EXTREME SPORTS" (U.S. Reg. No. 2,823,787); "BOSS BOSS EXTREME" (U.S. Reg. No. 2,786,971); and "BOSS JUMBO" (U.S. Reg. No. 247,275).  On information and belief, BIM has not—now or ever—opposed any of the BOSS® Marks.

12.    As a result of Boss Manufacturing Company's and PIP's exclusive and extensive use of the BOSS® Marks—over more than 120 years combined—they have acquired great value and become widely known to the public and trade industry.  They identify PIP exclusively and uniquely as the source of goods and services, including gloves, available under the "BOSS" brand.

13.    Building on the century-old reputation of its "BOSS" brand, PIP widely promotes and sells gloves under that brand in the United States, including through its www.bossgloves.com website.  As a result, the BOSS® Marks are well-known and have developed secondary meaning in the minds of the purchasing public.  Indeed, the goods and services bearing relation to the BOSS® Marks are immediately identified by the purchasing public with PIP.

14.    This secondary meaning communicates to the purchasing public that gloves and other PPE sold under any "BOSS" brand originate with PIP and are produced with the same high quality and standards that Boss Manufacturing Company has maintained for over a century.  The secondary meaning, reputation, and goodwill earned by the "BOSS" brand helped drive PIP to acquire the BOSS Glove and Safety business from Boss Manufacturing

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

Company in 2019.

**II.     BIM WILLFULLY INFRINGES PIP'S BOSS® MARKS AND CAUSES CONFUSION ABOUT THE ORIGIN OF ITS PRODUCTS**

15.     BIM has willfully infringed PIP's BOSS® Marks and has caused a substantial risk of consumer confusion about the origins of its products.

16.     PIP owns the registration for the standalone "BOSS" mark (U.S. Reg. No. 1,718,343).  The mark is broad.  It covers the use of the "BOSS" mark in *all colors* for various types of gloves.  Accordingly, PIP's "BOSS" mark appears in a variety of colors on its gloves, including white, blue, red, orange, and yellow.

17.     BIM has knowingly built its business around PIP's "BOSS" mark.  Through its family of websites, BIM sells gloves and other PPE products—the products at the core of the PIP "BOSS" business—through brands such as "BOSS," "BOSS Safety Products," "BOSS Tactical Supplies," "BOSS Emergency Preparedness," and "BOSS StrongBox."

18.     The common link between all of BIM's brands is PIP's "BOSS" mark.  BIM has designed its "BOSS" mark so that it appears very similar to PIP's BOSS® Marks, including BIM's use of a very similar style of boxy, capitalized font:



**PIP's "BOSS" Mark**                    **BIM's "BOSS" Mark**

19.     BIM advertises and sells gloves, strong boxes, safety equipment, and other PPE through a family of websites, including www.bosssafety.com, www.bossemergencypreparedness.com, www.bossstrongbox.com, www.bosstactical.com, www.buycasesforless.com, and www.justsafetysigns.com.  BIM provides links to these product websites through its company website, www.bossinno.com.

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

20.     Each of these websites emphasizes BIM's use of "BOSS" as a standalone mark.  While there may be descriptive words beneath the "BOSS" mark on BIM's websites, as shown below, those descriptive words often appear in much smaller font so that customers remain focused on associating BIM's websites and brands with "BOSS."



21.     With     the     exception     of     www.buycasesforless.com     and www.justsafetysigns.com, all of BIM's website URLs begin with "www.boss," which further emphasizes BIM's association with the "BOSS" mark.  Customers are likely to believe that websites selling gloves and PPE products that begin with "www.boss"— including BIM's websites and PIP's www.bossgloves.com website—are all related.

22.     Featured prominently on every page of most of BIM's websites is a standalone "BOSS" mark.  By placing the "BOSS" mark on its websites in that manner, BIM is misleading customers into believing that "BOSS" is the brand associated with the products being sold on BIM's websites and that those products originate with the manufacturer of "BOSS" products.

23.     By   way   of   example,   BIM   uses   the   "PELICAN"   mark   on   its www.buycasesforless.com website to indicate to customers that BIM is selling "PELICAN"-branded strong boxes that originated with Pelican Products, Inc.  Similarly, as shown below, it places the "BOSS" mark *in the exact same spot* on its www.bosssafety.com website—a site dedicated to sales of PPE and gloves—misleading customers into believing that the gloves and other products sold on that website belong to the "BOSS" brand and originated with PIP.

6

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

1

2

3

4

5

6

7

8

9

10

11

12

13



**www.buycasesforless.com**

14

15

16

17

18

19

20

21

22

23

24

25



26

**www.bosssafety.com**

27

28

24.     Not only is BIM likely confusing customers into believing that BIM's

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

products—such as the gloves sold on its websites—are manufactured and sold by PIP, it is likely confusing customers into believing that PIP's gloves are manufactured and sold by BIM.  Indeed, because PIP's "BOSS" gloves have been the preeminent working glove brand for over 120 years, customers are likely to associate any gloves sold with a "BOSS" mark with PIP.

25.    That risk of confusion is particularly acute because, in addition to the similarity between BIM's "BOSS" mark and PIP's BOSS® Marks, BIM's brands and websites target the same customer base as PIP, which includes professionals in the healthcare, construction, and emergency responder industries.

26.    BIM has capitalized on that risk of confusion and benefitted from the goodwill and reputation of PIP's BOSS® Marks by selling products that compete directly with PIP's gloves, to the same customers as PIP.  That approach has been deliberate, and made in full knowledge of PIP's BOSS® Marks.

27.    For example, PIP and its predecessor-in-interest, Boss Manufacturing Company, have sold gloves on the www.bossgloves.com website under the "hand protection" category.



**www.bossgloves.com**

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

28.     On information and belief, in or around 2016, *after* being made aware of the PIP marks, BIM modified its www.bosssafety.com website to prominently add a BOSS "hand protection" rubric designed to drive sales of gloves.



**www.bosssafety.com**

29.     The results of Google searches confirm that BIM's use of PIP's BOSS® Marks is likely to confuse customers.  For example, when searching Google for "boss gloves," PIP's    www.bossgloves.com    website    is    the    first    result.    But    BIM's    website (www.bosssafety.com) follows closely among the top 10 results.  It is likely that some customers will click the link to BIM's website and be misled into believing that it is one of PIP's websites or a website that sells PIP's products.

30.     Similarly, a review of Shopping results for a "boss safety products" Google search returns many of PIP's "BOSS" branded gloves, as shown below.  Some customers are therefore likely to believe that PIP's "BOSS" gloves are part of the "BOSS Safety Products" company and website run by BIM.

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

31.     While selling gloves and other products under the "BOSS" mark, BIM does not own—and has never owned—marks that cover the standalone use of the "BOSS" mark or the use of "BOSS" to advertise and sell gloves.  Indeed, BIM has only two active registered trademarks.  These marks are both for the use of "BOSS STRONG BOX" (U.S. Reg. Nos. 5,150,126 and 5,456,841) for lock boxes made of metal.  Neither covers gloves or other PPE products.  While BIM once owned other marks—including two for "BOSS SAFETY PRODUCTS" (U.S. Ser. Nos. 85,377,183 and 85,377,207)—those marks were abandoned over a decade ago.

32.     As a result of BIM's infringing activities, BIM is damaging PIP's BOSS® Marks by associating those marks with gloves and other products that are not manufactured by PIP or with the same quality as PIP's gloves.

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

### III.     PIP PUTS BIM ON NOTICE OF ITS INFRINGMENT

33.     BIM has known for over a decade that it is infringing PIP's BOSS® Marks. Nevertheless, BIM has continued to advertise and sell gloves with the "BOSS" mark, knowing that it would likely confuse customers.

34.     On April 15, 2011, Boss Manufacturing Company sent a cease-and-desist letter to BIM's BOSS Safety Products company.  Ex. 1.  The April 15 letter explained that BIM's use of the BOSS® Marks was a "clear violation of the trademark rights" of Boss Manufacturing Company and that BIM's use of the marks would "inevitably result in customer confusion with actual and potential customers believing that the gloves and other disputed products sold by [BIM] in connection with the mark BOSS SAFETY PRODUCTS emanate from or are associated or affiliated with Boss Manufacturing."  Ex. 1 at 1-2.

35.     The April 15 letter demanded that BIM "cease and desist from any further use of the trademark BOSS SAFETY PRODUCTS, or any other mark which includes the word BOSS, in connection with the sale of gloves and safety equipment."  Ex. 1 at 3.  The April 15 letter identified several BOSS® Marks owned by Boss Manufacturing Company at the time (and now owned by PIP) for various types of gloves, including marks under U.S. Registration Nos. 1,974,576, 1,718,343, 1,146,594, 1,245,859, 1,221,513, 570,011, 210,819, 189,372, and 114,219.  And the letter also identified other BOSS® Marks under U.S. Registration Nos. 3,249,886 ("BOSS OUTDOORS®"); 2,743,904 ("BOSS EXTREME®"); 2,823,787 ("BOSS EXTREME SPORTS®"); 2,786,971 ("BOSS BOSS EXTREME®"); and 247,275 ("BOSS JUMBO®").

36.     BIM replied to the April 15 letter in a letter dated April 21, 2011.  Ex. 2.  BIM asserted that the marks it used were "distinct and dissimilar" but focused on minor differences in the competing marks, namely that its mark used all uppercase letters and different colors than PIP's BOSS® Marks and incorporated a globe design.  Ex. 2 at 2.  BIM also asserted that there was no evidence of consumer confusion in the marketplace, and claimed—without any supporting evidence—*that Boss Manufacturing Company's "client*

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

*base and marketing channels used to sell the [Boss Manufacturing Company] products are dissimilar from those of [BIM]*." Ex. 2 at 2-3 (emphasis added).  Notably, BIM did not deny that there existed a potential for customer confusion, nor that it would be impossible for a customer to be confused by BIM's use of PIP's BOSS® Marks.

37.     Boss Manufacturing Company replied to BIM's April 21 letter in a letter dated September 15, 2011.  Ex. 3.  Boss Manufacturing Company noted that BIM's actions flatly "contradict[ed] many of the arguments raised and facts asserted" in its April 21 letter.  In particular, Boss Manufacturing Company revealed that shortly after sending its letter, BIM had promptly filed several trademark applications, Ex. 3 at 1, including one on August 4, 2011 for the "BOSS SAFETY PRODUCTS" mark in connection with gloves.  Ex. 3 at 1-2.

38.     According to Boss Manufacturing Company, BIM's trademark applications were "an admission that the mark Boss Safety Products is used on … gloves."  Ex. 3 at 2.  Indeed, those trademark applications confirmed that BIM was not acting in good faith by continuing to use the BOSS® Marks.

39.     Notwithstanding those exchanges, BIM continued to use the BOSS® Marks for over a decade, knowing it had no right to use those marks.  It did nothing to change its websites or its product advertising to remove the infringing use of the BOSS® Marks and reduce the likelihood of customer confusion.  If anything, BIM did the opposite.  On information and belief, in or around 2016, and as noted above, it modified its www.bosssafety.com website to further conform its marketing to that of the Boss Manufacturing Company—increasing the risk of customer confusion.

40.     After PIP acquired the BOSS Glove and Safety business, PIP sent another cease-and-desist letter to Mike Curtis, owner of BIM, on August 31, 2022.  Ex. 4.  That August 31 letter stated that BIM's "use of PIP's BOSS® trademark in connection with directly competing and related goods represents a clear and undeniable infringement of our client's trademark rights."  Ex. 4 at 2.  The August 31 letter noted that BIM's infringing use of PIP's BOSS® Marks "is particularly troubling because consumers will naturally associate

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

1   PIP's actual products being sold via BIM retail channels with BIM's infringing products,

2   thus compounding the marketplace confusion." Ex. 4 at 2-3.  The August 31 letter then

3   demanded that BIM "[i]mmediately cease any and all uses of the BOSS® trademark or any

4   confusingly similar marks" and "[r]efrain from any similar acts or schemes involving the

5   BOSS® mark in the future," among other demands.  Ex. 4 at 3.

6        41.    BIM replied to PIP's August 31 letter in a letter dated October 18, 2022.  Ex.

7   5.  In that October 18 letter, BIM asserted that it was "simply an online retailer of a wide

8   range of personal safety equipment and safety storage devices manufactured by industry

9   leaders," and that any gloves sold on its website "are not being sold as any private label

10  brand of [BIM], but rather are third-party products bearing their own respective trademarks

11  which are simply being resold through the www.bosssafety.com website."  Ex. 5 at 2.

12  Tellingly, BIM did not deny the similarity between PIP's BOSS® Marks and BIM's

13  "BOSS" mark.  Nor did BIM deny the likelihood that customers would be confused into

14  believing that BIM is selling PIP's "BOSS" branded gloves.

15       42.    Since PIP's August 31 letter, BIM has continued to willfully infringe PIP's

16  BOSS® Marks and has refused to cease that infringement or ameliorate the customer

17  confusion caused by its infringing activities.  BIM's continued failure to heed two rounds of

18  cease-and-desist letters, the trademark applications it filed after receiving the initial April

19  15, 2011 cease-and-desist letter, and its ongoing use of its "BOSS" brand, all demonstrate

20  BIM's bad faith in its continued willful infringement of PIP's BOSS® Marks.

21  <u>**COUNT I – TRADEMARK INFRINGEMENT (15 U.S.C. §1114)**</u>

22       43.    The allegations set forth in the foregoing paragraphs 1 through 42 are

23  incorporated into this First Claim for Relief.

24       44.    PIP is the owner of the United States trademark registrations for its BOSS®

25  Marks—U.S. Registration Nos. 4,833,262; 4,740,612; 5,071,598; 4,229,060; 3,249,886;

26  2,743,904; 2,823,787; 2,786,971; 1,974,576; 1,718,343; 1,146,594; 1,245,859; 1,221,513;

27  570,011; 247,275; 210,819; 189,372; and 114,219—all of which are valid, subsisting, and

28

1    incontestable.  Copies of the certificates of registration for U.S. Registration Nos. 114,219;

2    189,372; 210,819; 570,011; 1,221,513; 1,245,859; 1,146,594; 1,718,343; and 1,974,576 are

3    attached hereto as Exhibits 6-14.  PIP's BOSS® Marks have acquired secondary meaning

4    with customers and the industry and are associated with PIP, its brand, its products, and the

5    quality of its products.

6          45.    BIM's actions, described above, constitute unauthorized use in commerce of

7    a registered trademark in connection with the sale and advertising of goods.  Such use is

8    likely to cause confusion or to cause mistake or to deceive customers regarding the goods

9    advertised and sold by BIM.

10         46.    As such, BIM's trademark infringement violates 15 U.S.C. § 1114(1)(a).

11         47.    BIM's actions have caused, and unless restrained by the Court, will continue

12   to cause, serious and irreparable injury to PIP and the goodwill associated with its BOSS®

13   Marks.

14         48.    BIM's trademark infringement is willful, and damages should be trebled as

15   permitted by applicable law.

16         49.    BIM's actions have caused damages to PIP in an amount to be proven at trial.

17   **COUNT II – FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

18         50.    The allegations set forth in the foregoing paragraphs 1 through 49 are

19   incorporated into this Second Claim for Relief.

20         51.    BIM's actions, described above, constitute use of a false designation of origin

21   in commerce in connection with the sale and advertising of goods.  Such use is likely to

22   cause confusion or to cause mistake or to deceive as to the origin, sponsorship, or approval

23   of the goods advertised and sold by BIM.

24         52.    As such, BIM's use of PIP's BOSS® Marks in commerce constitutes false

25   designation of origin and violates 15 U.S.C. § 1125.

26         53.    BIM's actions have caused, and unless restrained by the Court, will continue

27   to cause, serious and irreparable injury to PIP and the goodwill associated with PIP's

28

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

1  BOSS® Marks.

2       54.    BIM's engagement in false designation of origin is willful, and damages

3  should be trebled as permitted by applicable law.

4       55.    BIM's actions have caused damages to PIP in an amount to be proven at trial.

5  <center>**JURY DEMAND**</center>

6      Pursuant to Rule 38 of the Federal Rules of Civil Procedure, PIP demands a trial by

7  jury on all issues triable as such.

8  <center>**PRAYER FOR RELIEF**</center>

9      WHEREFORE, PIP demands judgment for itself and against BIM as follows:

10      A.    An adjudication that BIM has infringed the mark with U.S. Registration No.

11  114,219;

12      B.    An adjudication that BIM has infringed the mark with U.S. Registration No.

13  189,372;

14      C.    An adjudication that BIM has infringed the mark with U.S. Registration No.

15  210,819;

16      D.    An adjudication that BIM has infringed the mark with U.S. Registration No.

17  570,011;

18      E.    An adjudication that BIM has infringed the mark with U.S. Registration No.

19  1,221,513;

20      F.    An adjudication that BIM has infringed the mark with U.S. Registration No.

21  1,245,859;

22      G.    An adjudication that BIM has infringed the mark with U.S. Registration No.

23  1,146,594;

24      H.    An adjudication that BIM has infringed the mark with U.S. Registration No.

25  1,718,343;

26      I.    An adjudication that BIM has infringed the mark with U.S. Registration No.

27  1,974,576;

28

<center>15</center>

J.      An adjudication that BIM's infringement of the mark with U.S. Registration No. 114,219 was willful;

K.      An adjudication that BIM's infringement of the mark with U.S. Registration No. 189,372 was willful;

L.      An adjudication that BIM's infringement of the mark with U.S. Registration No. 210,819 was willful;

M.      An adjudication that BIM's infringement of the mark with U.S. Registration No. 570,011 was willful;

N.      An adjudication that BIM's infringement of the mark with U.S. Registration No. 1,221,513 was willful;

O.      An adjudication that BIM's infringement of the mark with U.S. Registration No. 1,245,859 was willful;

P.      An adjudication that BIM's infringement of the mark with U.S. Registration No. 1,146,594 was willful;

Q.      An adjudication that BIM's infringement of the mark with U.S. Registration No. 1,718,343 was willful;

R.      An adjudication that BIM's infringement of the mark with U.S. Registration No. 1,974,576 was willful;

S.      An adjudication that BIM's infringement of PIP's BOSS® Marks constitutes false designation of origin;

T.      An adjudication that BIM's false designation of origin was willful;

U.      An award of damages to be paid by BIM adequate to compensate PIP for its past infringement of the BOSS® Marks and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses, and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

V.      An award of damages to be paid by BIM adequate to compensate PIP for its past false designation of origin and any continuing or future false designation of origin

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

through the date such judgment is entered, including interest, costs, expenses, and an accounting of all acts of false designation of origin including, but not limited to, those acts not presented at trial;

W.    That a permanent injunction be issued enjoining BIM and its agents, servants, employees, attorneys, and all persons in active concert or participation with them:

       i.    From using the BOSS® Marks or any marks confusingly similar thereto in connection with its products; and

      ii.    From using the BOSS® Marks or from otherwise infringing the BOSS® Marks; and

    iii.    From using the BOSS® Marks to falsely designate the origin of BIM's products.

X.    That BIM be required to remove from use any websites, physical or electronic advertisements, collateral or promotional materials bearing the infringing marks;

Y.    A declaration that this case is exceptional under 15 U.S.C. § 1117, and an award of PIP's reasonable attorneys' fees;

Z.    A declaration that the monetary award to PIP be increased and trebled based on willful infringement pursuant to 15 U.S.C. § 1117;

AA.    That the Court find this case to be exceptional under federal and common law;

BB.    For pre-judgment and post-judgment interest at the maximum legal rate;

CC.    For attorneys' fees and costs; and

DD.    An award to PIP of such further relief at law or in equity, including injunctive relief barring further infringement, as the Court deems just and proper.

//

//

//

//

//

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

DATED:  January 13, 2023

Ekwan E. Rhow
Timothy B. Yoo
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.


By: _____/s/ Timothy B. Yoo_____

Timothy B. Yoo
Attorneys for Plaintiff Protective Industrial
Products, Inc.


DATED:  January 13, 2023

Benoit Quarmby (*pro hac vice forthcoming*)
Jonathan E. Barbee (*pro hac vice forthcoming*)
Catherine Martinez (*pro hac vice forthcoming*)
MOLOLAMKEN LLP


By: _____/s/ Benoit Quarmby_____

Benoit Quarmby
Jonathan E. Barbee
Catherine Martinez
Attorneys for Plaintiff Protective Industrial
Products, Inc.

18

COMPLAINT FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN